# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WILLIAM POOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-00014-GCS** |
| | ) | |
| **LACY HILL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court are Plaintiff's Motion for Leave to File an Amended Complaint and Plaintiff's Motion for Emergency Injunction. (Doc. 30, 34). Plaintiff filed the Motion for Leave to File an Amended Complaint on May 7, 2024. (Doc. 30). He subsequently filed his Motion for Emergency Injunction on June 10, 2024. (Doc. 34). Defendants filed a Response to Plaintiff's Motion for Preliminary Injunction on June 24, 2024. (Doc. 37). For the reasons delineated below, Plaintiff's Motion for Leave to File an Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 30). Additionally, Plaintiff's Motion for Emergency Injunction is **DENIED**. (Doc. 34).

## BACKGROUND

### A.    Plaintiff's Initial Complaint

Plaintiff William Poor, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Shawnee Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights while he was at

Pinckneyville Correctional Center. Plaintiff filed his initial Complaint on January 5, 2023.
(Doc. 1). On October 24, 2023, Plaintiff's Complaint survived preliminary review
pursuant to 28 U.S.C. § 1915A(b). (Doc. 10, p. 8). Specifically, Plaintiff's claims against
Defendants Lacy Hill ("Hill") and Aaron Lacy ("Lacy") were allowed to proceed. *Id.*

In his Complaint, Plaintiff alleged that on May 6, 2022, Defendant Lacy spit in his
face, slammed him against the wall, cuffed him up, and issued a disciplinary ticket as he
was leaving his housing wing to attend school. (Doc. 1, p. 8). Plaintiff was then placed on
crisis watch, and he started a hunger strike. *Id.* On May 10, 2022, the ticket issued by
Defendant Lacy was expunged and Plaintiff was released from crisis watch. *Id.* However,
Defendant Hill, who worked in the placement office at Pinckneyville, allegedly told
Plaintiff that he "deserved to get his ass whopped." *Id.* She went on to tell Plaintiff that
she placed him where she wanted him, and he was the one who "got into trouble so have
fun in your new cell." *Id.* Plaintiff was then placed in a cell with a cellmate, Willie Vail,
who was much larger than him. *Id.* Vail was also serving a life sentence and had a history
of violence. *Id.* Over a period of seventeen days, Vail bullied Plaintiff, called him names,
and abused him mentally and physically. *Id.* at p. 9.

On May 27, 2022, Plaintiff and Vail had an altercation in their cell, with Plaintiff
suffering a swollen cheek and black eye. (Doc. 1, p. 9). Plaintiff reported the incident and
was placed on investigative status in restrictive housing. *Id.* After being released from
restrictive housing, Plaintiff was placed in the cell directly across from Vail. *Id.* Vail began
making verbal threats against Plaintiff. *Id.* On June 7, 2022, Plaintiff received a
disciplinary ticket for the events that occurred on May 27 with his cellmate. *Id.* at p. 10.

Plaintiff was released from restrictive housing once again on September 26, 2022. *Id.* at p.
11-12. He was again placed in a cell next to Vail. *Id.* at p. 11. Plaintiff refused his housing
assignment, and a disciplinary ticket was issued against him, which placed him on
"dayroom restriction." *Id.* Plaintiff was told by Lieutenant Wangler that there was no
keep separate form ("KSF") order in the computer system that required that Plaintiff be
separated from Vail. *Id.*

Based on these allegations, the Court found that Plaintiff had sufficiently stated an
Eighth Amendment excessive force claim against Defendant Lacy for spitting on him,
yelling at him, and slamming him into the wall. (Doc. 10, p. 5). The Court also found that
Plaintiff had pled facts sufficient to state an Eighth Amendment claim for cruel and
unusual punishment against Defendant Hill for intentionally placing him in a cell with a
violent cellmate. *Id.* at p. 6.

**B.    Plaintiff's Proposed Amended Complaint**

In his proposed Amended Complaint, Plaintiff alleges that on or around June 24,
2022, Correctional Officer ("C/O") Tyner woke him up by cursing and yelling. (Doc. 30,
Exh. 1, p. 11). Tyner reportedly told Plaintiff that he was moving to "R5/D/77
and to pack his things." *Id.* Tyner proceeded to let the workers out of their cells, and later
returned with Lieutenant ("Lt.") Webb to move Plaintiff to his new cell. *Id.* Plaintiff
requested to speak with the Major because he did not understand why he was being
moved. *Id.* Lt. Webb then allegedly took out his mace, placed it to Plaintiff's left eye and
said, "I want you out of my fucking house, NOW!" *Id.* In response, Plaintiff raised his
arms and said, "I am not doing anything wrong sir." *Id.* Plaintiff was then cuffed up and

escorted to healthcare. Lt. Webb continued to insult Plaintiff on the way there, telling Plaintiff he was "a real piece of shit, I'll make sure you don't break this ticket." *Id.* at p. 12. Plaintiff was seen by a mental health professional and placed on crisis watch. *Id.* Plaintiff was served with a ticket from Lt. Webb regarding the June 24th incident on June 27, 2022. *Id.* On June 28, 2022, Lt. Frank came to meet with Plaintiff and took his statement regarding the June 24th incident. *Id.* Plaintiff then went on a hunger strike on July 2, 2022. *Id.* at p. 13.

On July 5, 2022, Plaintiff spoke with Warden Mitchell and requested an administrative transfer out of Pinckneyville. (Doc. 30, Exh. 1, p. 13). On July 11, 2022, Plaintiff requested hygiene products and a cup of ice from C/O Ms. E and C/O Adcock. *Id.* They refused to fulfill Plaintiff's request, stating that he "would have to come off [the hunger strike] to stay cool and clean." *Id.* Plaintiff spoke to Warden Mitchell again about his transfer request on July 12, 2022, and Plaintiff claims that Mitchell told him his request was approved and that he needed to end his hunger strike. *Id.* On July 16, 2022, Plaintiff asked C/O Ms. E if he could have his shower and phone call. *Id.* C/O Ms. E allegedly told Plaintiff "[h]ell, No! I don't care what you say and no I won't give you a crisis team so kill yourself, it will be easier on everyone." *Id.*

On or around July 22, 2022, Lt. Frank pulled Plaintiff out of his cell and privately took him to see Warden Mitchell. (Doc. 30, Exh. 1, p. 13). Mitchell told Plaintiff he would transfer him if he ended his hunger strike. *Id.* Plaintiff then asked about what happened to his ticket from Lt. Webb and the KSF on Willie Vail. *Id.* Mitchell told Plaintiff that the ticket was lost and that Willie Vail was on a disciplinary transfer. *Id.* Plaintiff was then

taken to healthcare, where he requested a shower and a phone call. *Id.* at p. 14. C/O Spencer and C/O Baker allegedly denied his request. *Id.* Dr. Myers then reportedly came to take Plaintiff's blood and threatened Plaintiff that he would get the tactical team to force feed Plaintiff without a Court Order. *Id.*

On July 23, 2022, Plaintiff claims that Sergeant ("Sgt.") Morgan, Lt. Johnson, and Major ("Maj.") Smith denied Plaintiff the phone and told Plaintiff that "hunger strike guys don't get to use the phone at all." (Doc. 30, Exh. 1, p. 14). On July 25, 2022, Plaintiff ended his hunger strike because he was promised a transfer. *Id.* On July 26, 2022, Dr. Myers discharged Plaintiff from healthcare even though Plaintiff's legs were swollen and painful. *Id.* Plaintiff told four separate nurses on July 27 and July 28 that his legs were in pain, and they laughed and told him that "no one here cares." *Id.*

On July 29, 2022, Plaintiff saw Willie Vail at chow, and Vail threatened Plaintiff saying, "watch your back snitch, the guys are gonna get you." (Doc. 30, Exh. 1, p. 14). Plaintiff reportedly informed Lt. Tate about the threat, and Plaintiff claimed that Tate responded, "I don't care you're a troublemaker." *Id.* Plaintiff saw Vail again on July 31, 2022. *Id.* at p. 15. Vail told Plaintiff, "I see you bitch, hahaha. Be scared." *Id.* Plaintiff once again informed Tate about Vail's threats, but Tate allegedly did nothing in response. *Id.*

Plaintiff filed a grievance about these incidents on August 31, 2022. (Doc. 30, Exh. 1, p. 15). Plaintiff claims the grievance was deemed an emergency. *Id.* On September 8, 2022, Counselor Anita Hill told Plaintiff that his grievance was still being processed and that they were waiting for additional responses. *Id.*

On September 26, 2022, Plaintiff was moved from "R5/A/61" to go to "R4/D/60."

(Doc. 30, Exh. 1, p. 15). Willie Vail was "next door in R4/D/61," and Vail threated Plaintiff

again. *Id.* Plaintiff told the C/O on duty "what was going on," but was punished with

"dayroom restriction." *Id.* Plaintiff then filed another grievance about being placed next

to Vail. *Id.* Around October 12, 2022, Plaintiff was informed that a KSF was not entered.

*Id.* On November 4, 2022, Plaintiff's ticket was expunged for refusing housing. *Id.*

DISCUSSION

**A.    Plaintiff's Motion for Leave to File an Amended Complaint**

In Plaintiff's Motion for Leave to File an Amended Complaint, Plaintiff seeks to

add claims against 41 new individuals.[1] However, Plaintiff has failed to associate a

number of these individuals with specific claims, such that they may be put on notice of

the claims brought against them and can properly answer the complaint. *See Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. PROC. 8(a)(2). Merely invoking the

name of a potential defendant is not sufficient to state a claim against that individual. *See*

*Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, because Plaintiff has failed

to plead any factual allegations against Defendants Jeffreys, Lawless, Rodman, Hale,

Ridgeway, Neal, Bayler, Clause, Martin, Saddler, Dudek, Stuts, Ryan, Dillner, Walla,

---

[1]      The new individuals Plaintiff seeks to add to his Complaint include - Rob Jeffreys, David
Mitchell, Major W. Lawless, C/O Jeff Spencer, C/O Alexander R. Rodman, Grievance Officer
Hale, Lt. Brandon W. Ridgeway, C/O Marcus T. Neal, Travis Bayler, Major D. Clause, Sargent
Martin, Counselor Anita Hill, C/O Tyner, Lt. Webb, Counselor Saddler, C/O Ms. E., C/O
Adcock, Lt. Joseph Dudek, Mental Health Professional Ms. Stuts, Sgt. Ryan, Dr. Myers, Lt. Frank,
Lt. Baker, Lt./Major Tate, Sgt. Morgan, Lt. Johnson, Major Smith, C/O Dillner, C/O Ms. Walla,
Lt. Wangler, Major J. Maonati, Grievance Officer M. Lively, C/O C. Simmons, C/O Bell, Major
Adam, Grievance Officer Diane Skorch, Sgt. Obertini, John / Jane Doe 1 (employed as a transfer
coordinator in IDOC), John / Jane Doe 2 (employed in clinical services at Pickneyville), John /
Jane Doe 3 (employed in placement services in IDOC), and John / Jane Doe 4 (employed in the
records office at Pickneyville). (Doc. 30, Exh. 1, p. 1-7).

Wangler, Maonati, Lively, Simmons, Bell, Adam, Skorch, Obertini, and John/Jane Does 1, 2, and 4, they will be dismissed from this action without prejudice.

As to the remainder of the allegations in Plaintiff's proposed amended complaint, most are unrelated to the two claims pending in the present lawsuit. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the _Twombly_ pleading standard.** _See Bell Atlantic v. Twombly_, 550 U.S. 544, 570 (2007). The existing claims include an excessive force claim against Defendant Lacy and a claim for cruel and unusual punishment against Defendant Hill. (Doc. 10, p. 5). The claim against Defendant Lacy concerns an altercation that allegedly took place between Lacy and Plaintiff on May 6, 2022, while Plaintiff was being moved to a new cell. (Doc. 1, p. 8). None of Plaintiff's new allegations pertain to this incident.

Plaintiff's Eight Amendment claim against Hill concerns Hill's decision to place Plaintiff in a cell with Willie Vail, an inmate who has a history of violence. Plaintiff was subjected to Vail's violent tendencies—as evidenced by their May 27, 2022, altercation where Plaintiff sustained an injury to his eye and cheek. (Doc. 1, p. 9). Plaintiff's allegations against Lt. Tate, John/Jane Doe 3, and the C/O on duty on September 26, 2022, also concern a disregard to Plaintiff's safety with respect to inmate Vail and therefore fall within his existing Eighth Amendment claim in Count 3.

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." _Farmer v. Brennan_, 511 U.S. 825, 833 (1994). To state a claim for failure to protect, a plaintiff must show that prison officials were

aware of a specific, impending, and substantial threat to his safety "by showing that he
complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d
90, 92 (7th Cir. 1996).

As to Lt. Tate, Plaintiff alleges that on July 29, 2022, and July 31, 2022, he told Tate
about the new threats, but that Tate told him that he didn't "care about a troublemaker."
(Doc. 30, Exh. 1, p. 14-15). The threats—"watch your back snitch, the guys are gonna get
you" and "be scared"—are vague, even when considering Plaintiff's physical altercation
with Vail two months prior. Thus, there are no facts indicating that Tate knew that
Plaintiff faced a specific, impending, and substantial threat to his safety and, despite this
knowledge, failed to act.

Additionally, Plaintiff has failed to allege an actual injury arising from Tate's
failure to act. The Seventh Circuit has acknowledged that, while "it is the reasonably
preventable assault itself, rather than any fear of assault, that gives rise to a compensable
claim under the Eighth Amendment," the Eighth Amendment does not preclude suits by
prisoners "grounded solely on claims of psychological injury." *Doe v. Welborn*, 110 F.3d
520, 524 (7th Cir. 1997), *as amended* (May 29, 1997) (citing *Babcock v. White*, 102 F.3d 267,
272-273 (7th Cir. 1996)). However, the only injury Plaintiff alleges related to Vail is an eye
and cheek injury from the altercation on May 27, 2022, approximately 2 months before
his alleged complaints regarding Tate. Plaintiff alleges no physical or psychological
injuries arising from Tate's failure to respond to Plaintiff's complaints related to Vail's
July threats. Plaintiff has thus failed to state an Eighth Amendment claim against him.

Next, Plaintiff alleges that on September 26, 2022, he was placed in the cell next door to Vail. Plaintiff does not identify a specific injury related to his September placement. However, based on his history with Vail, including their May 27, 2022, altercation, and Plaintiff's claim that Vail "started to make threats to Plaintiff" from cell R4/D/61, it is plausible that Plaintiff incurred a psychological injury in violation of his Eighth Amendment rights because of his placement. *See, e.g., Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (explaining that "physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited" under the Eighth Amendment) (citations omitted). Therefore, at this early juncture, the Court will allow Plaintiff's claim against John/Jane Doe 3 related to his cell placement on September 26, 2022, to proceed.

The only other person Plaintiff mentions in the factual narrative related to his September placement is "the C/O on duty." (Doc. 30, Exh. 1, p. 15). The C/O on duty, however, is not included in Plaintiff's list of 41 new defendants he seeks to add in his Proposed Amended Complaint. A party must be named in the case caption. *See* FED. R. CIV. PROC. 10. Because Plaintiff has failed to do so, no claims will be allowed to proceed against the C/O on duty. *See, e.g., Frye v. Hughes*, Case No. 24-cv-2514-DWD, 2024 WL 5137555, at *3 (S.D. Ill. Dec. 17, 2024) (dismissing three individuals because those individuals were not named in the case caption).

Plaintiff alleges that, after Vail began to threaten him, he told the C/O "what was going on" and was then "taken to 'dayroom restriction' to be punished for no reason." *Id.* These vague allegations fail to show that he complained to the C/O about a specific,

impending, and substantial threat to his safety. And, like Tate, Plaintiff fails to identify an injury arising from the C/O's failure to act. Accordingly, he fails to state a claim against the C/O.

Lastly, Plaintiff alleges that Ms. E, C/O Adcock, C/O Spencer, C/O Baker, Sergeant Morgan, Lt. Johnson, and Major Smith denied him access to hygiene products, showers, and phone calls. Specifically, Plaintiff claims that on July 11, 2022, Plaintiff was denied hygiene products and a cup of ice by MS. E and C/O Adcock. (Doc. 30, Exh. 1, p. 13). They allegedly told Plaintiff that "he would have to come off [the hunger strike] to stay cool and clean" if he wanted his requests fulfilled. *Id.* Later, on July 16, 2022, Plaintiff asked Ms. E if he could have a shower and a phone call. *Id.* She reportedly denied Plaintiff's requests, telling Plaintiff "[h]ell, No! I don't care what you say and no I won't give you a crisis team so kill yourself; it will be easier on everyone." *Id.* Plaintiff also was allegedly denied a shower and phone call once again by Ms. E on July 18, 2022. *Id.* Plaintiff was then taken to healthcare on July 22, 2022, where he requested a shower and a phone call. *Id.* at p. 14. C/O Spencer and C/O Baker allegedly denied his request. *Id.* Then on July 23, 2022, Plaintiff requested to use the phone once again, and Sergeant Morgan, Lt. Johnson, and Major Smith denied him access, replying that "[h]unger strike guys don't get to use the phone at all." *Id.*

Here, the Court finds that Plaintiff has set out a chronology of facts for First Amendment retaliation claims against these individuals. Prison Officials may not retaliate against inmates for filing grievances, lawsuits or otherwise complaining about their conditions of confinement. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012);

*Walker v. Thompson*, 288 F.3d 1005, 1009 (7ᵗʰ Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7ᵗʰ Cir. 2000) (citation omitted). Plaintiff's proposed amended complaint sets out facts that lead the Court to believe that he was denied access to these basic amenities because he engaged in a hunger strike to protest the lack of measures put in place to protect him against Vail. Thus, the Court will allow these claims to proceed.

Accordingly, Plaintiff may pursue the following claims in this case:

**Claim 1:** Eighth Amendment excessive force claim against Correctional Officer Lacy.

**Claim 2:** Eighth Amendment cruel and unusual punishment claim against Ms. Hill for intentionally placing Plaintiff in a cell with a violent cellmate.

**Claim 3:** Eighth Amendment cruel and unusual punishment claim against John/Jane Doe 3 for intentionally placing Plaintiff in a cell on September 26, 2022, which was near a violent cellmate who had previously attacked him.

**Claim 4:** First Amendment retaliation claim against Ms. E, C/O Adcock, C/O Spencer, C/O Baker, Sergeant Morgan, Lt. Johnson, and Major Smith for depriving Plaintiff of privileges including showers, phone access and hygiene products.

**B.    Plaintiff's Motion for Emergency Injunction**

Plaintiff has also filed a Motion for Emergency Injunction. (Doc. 34). In his motion, Plaintiff states that he "fears for his life as this complaint starts to intensify and go[es] further in the process of law." *Id.* at p. 1. As relief, Plaintiff requests that this Court enter an injunctive order directing IDOC to transfer Plaintiff to a correctional center "further away" from Pinckneyville. *Id.* In their response to Plaintiff's Motion, Defendants argue

that Plaintiff has failed to meet the threshold requirements of a preliminary injunction. (Doc. 37, p. 3-4). The Court agrees with the Defendants assessment.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "The purpose of preliminary injunctive relief is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.'" *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). To obtain a preliminary injunction, a moving plaintiff must demonstrate: (1) a reasonable likelihood of success on the merits of underlying claim; (2) the inadequacy of a remedy at law; (3) the existence of irreparable harm if the injunction is not issued; (4) the threat of harm to the plaintiff outweighs the threatened harm to the defendant if the injunction were issued; and (5) the granting of a preliminary injunction will not disserve the public interest. *Kiel v. City of Kenosha*, 236 F.3d 814, 815-816 (7th Cir. 2000); *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1014-15 (7th Cir. 1990).

The most obvious defect in Plaintiff's motion is that he fails to sufficiently allege that he would suffer irreparable harm if the requested preliminary injunction is denied. To meet this requirement, Plaintiff must assert more than a mere possibility of harm. *Id.* "Issuing a preliminary injunction based only on the possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Plaintiff merely states that he fears for his life as his case is proceeding. Plaintiff has not provided the Court with any proof beyond his conclusory allegations, that he is

likely to suffer any harm or is in imminent danger. Plaintiff only makes a single vague statement regarding a generalized risk of harm that he allegedly faces in his current circumstances. The Court finds that these vague assertions do not meet his burden to obtain injunctive relief. Moreover, this request is moot in that after the filing of this motion, Plaintiff notified the Court on August 27, 2024, that he had been transferred to Shawnee Correctional Center. (Doc. 44).

### CONCLUSION

For the reasons set forth above, the Motion for Emergency Injunction is **DENIED.** (Doc. 34). Plaintiff's Motion for Leave to File an Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 30). The Clerk of Court is **DIRECTED** to add John/Jane Doe 3, Ms. E, C/O Adcock, C/O Spencer, C/O Baker, Sergeant Morgan, Lt. Johnson, and Major Smith as Defendants in this case. The Clerk of Court is also **DIRECTED** to add as a defendant, the Warden of Pinckneyville, for the sole purpose of identifying John/Jane Doe 3.

**IT IS SO ORDERED.**

**DATED:  March 27, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.27 15:47:18 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**