# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WILLIAM POOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-00014-GCS** |
| | ) | |
| **LACY HILL, and AARON M. LACY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant Lacy Hill's ("Hill") and Defendant Aaron M. Lacy's ("Lacy") Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 40). Defendants Hill and Lacy filed the Motion along with a Memorandum of Law in Support on July 17, 2024. (Doc. 40, 41). Plaintiff William Poor ("Poor") filed a Response to Defendants' Motion for Summary Judgment on July 31, 2024. (Doc. 43). For the reasons delineated below, Defendants' Motion for Summary Judgment is **DENIED**. (Doc. 40).

### PROCEDURAL BACKGROUND

Plaintiff Poor, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (Doc. 1). Plaintiff filed his original complaint in this matter on January 5, 2023, while incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). *Id.*

Page 1 of 16

In Plaintiff's Complaint, he alleges in relevant part, that on May 6, 2022, Defendant Correctional Officer Lacy spat in his face and yelled at him. (Doc. 1, p. 8). When Plaintiff asked Lacy why he was acting this way towards him, Lacy told Plaintiff, "I'm sick of dealing with you. Cuff up now." Lacy then allegedly slammed Plaintiff against the wall and placed him in handcuffs. Plaintiff was then taken to segregation and received a disciplinary ticket. That same date, Plaintiff was placed on crisis watch and received a disciplinary ticket. *Id.*

When Plaintiff was being released from crisis watch, Ms. Hill, who works in the placement office told Plaintiff that he deserved to "get his ass whopped." (Doc. 1, p. 8). She went on to tell Plaintiff that she placed him where she wanted him and that he was the one who "got into trouble so have fun in your new cell." Plaintiff was then placed in a cell with a cellmate who was much larger than him, who was serving a life sentence, and who had a history of violence. Over a period of seventeen days, Plaintiff's cellmate Willie Vail, bullied him, called him names, and abused him mentally and physically. *Id.* at p. 9. Then on May 27, 2022, Vail engaged in a physical altercation with Plaintiff, where Plaintiff received a swollen cheek and a black eye. *Id.* at p. 10.

On October 24, 2023, the Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 10). The following claims survived screening and were allowed to proceed:

> **Count 1**: Eighth Amendment excessive force claim against Correctional Officer Lacy
>
> **Count 3:** Eighth Amendment cruel and unusual punishment claim against Ms. Hill for intentionally placing Plaintiff in a cell with a

violent cellmate.

(Doc. 10, p. 8).

Defendants Hill and Lacy answered Plaintiff's Complaint on February 1, 2024. (Doc. 25). The Court then issued an initial scheduling order regarding the issue of exhaustion of administrative remedies on March 6, 2024. (Doc. 29). The Court held a hearing on Defendants' motion for summary judgment regarding exhaustion on February 6, 2025. (Doc. 52).

FACTUAL BACKGROUND

Plaintiff submitted several grievances during the relevant period. *See generally* (Doc. 41, Exh. 3-5). However, Defendants have identified four grievances relevant to Plaintiff's claims. (Doc. 41, p. 3-6). Plaintiff addresses three of these grievances in his Response to Defendants' Motion for Summary Judgment. (Doc. 43, p. 2-3). Accordingly, the Court will recount the content of these grievances below.

*1.      Grievance No. 1599-06-22*

Plaintiff submitted Grievance No. 1599-06-02 on June 3, 2022. (Doc. 41, Exh. 5, p. 54). In the Grievance, Plaintiff complains about retaliation, excessive use of force/threats, and missing property. *Id.* Plaintiff recounts the indicated dated May 6, 2022, with Defendant Lacy stating:

> At approx. 12:15 pm, grievant was leaving the wing and trying to check out with Aaron M. Lacy badge # 13121, when C.O. Lacy spit in grievant's face, yelled at grievant, belligerently, and when asked C.O. Lacy why he . . . was being this way towards grievant. C.O. Lacy put down his clipboard and told grievant "I am sick of dealing with you, Cuff up now" C.O. Lacy then slammed grievant into the B-wing wall next to the core, cuffed grievant up and passed grievant off to the sergeant on duty at the time. Grievant was

> then taken to seg. Grievant received ticket #20220732/1-PNK, . . . which was expunged on 5/10/2022 due to exonerating evidence.

(Doc. 41, Exh. 5, p. 54-55).

The Grievance was deemed an emergency and submitted directly to the Grievance Office for second level review. (Doc. 41, Exh. 4, p. 1). It was received by the Grievance Officer on June 9, 2022, and reviewed on January 30, 2023. (Doc. 41, Exh. 5, p. 52). The Grievance Officer requested a staff response from Defendant Lacy. *Id.* at p. 53. Lacy wrote that "[t]his R/O did not threaten individual Poor. This R/O did not spit in individual Poor's face. This R/O secured individual Poor in cuffs after individual Poor threatened this R/O for the safety and security of this facility and myself. This R/O never conspired against individual Poor." *Id.*  Ultimately, the Grievance Officer recommended that the Grievance be deemed "Mixed." *Id.* at p. 52. The Grievance Officer found Plaintiff's transfer request moot and affirmed the grievance regarding Plaintiff's complaints about missing property. *Id.* On January 31, 2023, the Chief Administrative Officer concurred with the Grievance Officer's finding. *Id.*

On February 27, 2023, the Administrative Review Board ("ARB") received several documents submitted by Plaintiff, including the appeal of Grievance No. 1599-06-22 (Doc. 41, Exh. 3, p. 5-8). Mr. Travis Baker, Executive II, with the ARB contacted Mr. Jeffrey Saddler at Pinckneyville on March 1, 2023, requesting additional information about the facility's recommendation for reimbursement for Plaintiff's property. *Id.* at p. 13. Sadler responded the following day indicating that the reimbursement had been finalized. *Id.* Plaintiff then received a final review from the Director of the ARB on March 6, 2023. *Id.*

at p. 2. The letter stated that "[i]n accordance with A.D. 02.06.110, as a result of the Committed Person's Grievance Report #1599-06-22 the above Grievant is to be reimbursed in the amount of $114.95 for the loss of books from the General Revenue Fund." *Id.* at p. 2.

**2.    *Grievance No. 2532-09-22***

Plaintiff submitted Grievance No. 2532-09-22 on September 11, 2022, as an emergency grievance. (Doc. 41, Exh. 3, p. 31). In the Grievance, Plaintiff complained that it had been well over 60 days since he submitted Grievance No. 1599-06-22, and that he had not received any form of response. *Id.* at p. 32. Plaintiff also complained that he had submitted Grievance No. 2403-08-22, regarding staff conduct, on or around August 30, 2022, which had been deemed an emergency by the CAO, and he had not received a response to that grievance either. *Id.* As relief, Plaintiff requested that he be reclassified to a minimum-security level, be approved for work release, be provided with one-year discretionary credit, and be provided with a response/approval for all grievances submitted by Plaintiff within the proper time frames. *Id.*

The Grievance was received by the facility on September 12, 2022, and was deemed to be non-emergent. (Doc. 41, Exh. 3, p. 32). A Counselor then received Plaintiff's Grievance on September 16, 2022. *Id.* at p. 31. The Counselor determined that Plaintiff's security level was addressed in the grievance response to Grievance No. 2244-08-22 and that Plaintiff did not meet the criteria for work release. *Id.* The Counselor also noted that the TCO denied Plaintiff's transfer request on August 22, 2022, due to "recent negative adjustment." *Id.* The Counselor also noted that grievances are answered as soon as

possible and in the order they were received. *Id.*

Plaintiff appealed the grievance to the Grievance Officer on October 3, 2022. (Doc.
41, Exh. 3, p. 29). The Grievance was reviewed by the Grievance Officer on October 14,
2022, and denied. *Id.* The CAO concurred with the Grievance Officer's decision that same
day. *Id.* Plaintiff appealed the Grievance to the ARB on October 20, 2022. *Id.* The ARB
received Plaintiff's Grievance on October 24, 2022. *Id.* at p. 28. On October 27, 2022, the
ARB denied Plaintiff's Grievance noting that the Facility was following DR504F. *Id.*

*3.*     *Grievance No. 1591-06-22*

Plaintiff submitted Grievance No. 1591-06-22 as an emergency grievance on June
3, 2022. (Doc. 41, Exh. 3, p. 66-67). The Grievance contained several complaints, including
the allegations discussed in Plaintiff's Complaint against Defendant Hill. *Id.* In the
Grievance, Plaintiff wrote:

> On or about 5/10/2022, grievant was released from suicide watch and was
> told by Ms. Hill who works in placement that grievant will be going to 3
> house D-wing cell 52 and that grievant deserves to get his "ass whopped."
> Grievant stated to Ms. Hill that he beat his ticket and has done nothing
> wrong. Ms. Hill responded by saying "I don't care, I place you where I want
> you, you're the one who got into trouble, so have fun in your new cell."

(Doc. 41, Exh. 3, p. 66-67). Plaintiff went on to recount the incident dated May 27, 2022,
with his newly assigned cellmate, Willie Vail, where Plaintiff received a black eye and
swollen cheek. *Id.*

The Grievance was deemed an emergency by the CAO on June 13, 2022. (Doc. 41,
Exh. 3, p. 66). On June 21, 2022, the Grievance Officer denied Plaintiff's Grievance. *Id.* at
p. 64-65. The Grievance Officer reached out to placement staff, who denied making the

comments to Plaintiff before placing him with Vail. *Id.* at p. 65. The Placement Office stated due to available beds, and other variables, Poor's and Vail's demographics were within reason when placed together (36lbs, 5 yrs. age difference; and 3in height difference) and sentence length was not a factor. *Id.* On June 22, 2022, the CAO concurred with the Grievance Officer's determination. *Id.* at p. 64.

Plaintiff appealed the Grievance to the ARB on July 18, 2022. (Doc. 41, Exh. 3, p. 64). The ARB received Plaintiff's Grievance on August 1, 2022. *Id.* at p. 63. On August 5, 2022, the ARB denied Plaintiff's Grievance because it was received 30 days past the date of the CAO's decision and no justification was provided for additional consideration. *Id.*

4.    *Grievance No. 2741-10-22*

Plaintiff submitted Grievance No. 2741-10-22 as an emergency grievance on September 26, 2022. (Doc. 41, Exh. 5, p. 7-8). In the Grievance, Plaintiff notes that he was placed in cell R3/D/52 with Willie Vail on or around May 10, 2022. *Id.* at p. 8. He elaborates further stating that he was attacked by Vail on or around May 27, 2022. *Id.* Plaintiff claims that a keep separate order was entered by internal affairs after the incident on May 27, 2022. *Id.* As relief, Plaintiff requested that the facility expunge any ticket related to the cell placement incident with Vail and a facility transfer. *Id.* at p. 7. On October 4, 2022, the CAO deemed the Grievance an emergency and forwarded the Grievance directly to the second level. *Id.*

The Grievance was reviewed by the Grievance Officer on October 7, 2022. (Doc. 41, Exh. 5, p. 5-6). Based on a review of all information available, the Grievance Officer affirmed that the grievant should not have been placed in the same cell as a KSF ("keep

separate from") and that DR202201903/1-PNK should be expunged. *Id.* at p. 5. The Grievance Officer denied the remainder of Plaintiff's grievance. *Id.* On October 7, 2022, the CAO remanded the Grievance, noting that "KSF cannot be on same wing." *Id.* There is no record of Plaintiff submitting the grievance to the ARB for a final decision. *See generally* (Doc. 41, Exh. 3).

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure

to exhaust was innocent.[1] *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims.

---

[1]    *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g.*, *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

*See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[2] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate. *See* 20

---

[2]    This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has

been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

### DISCUSSION

Defendants first contend that Plaintiff failed to exhaust Grievance No. 1599-06-02 because Plaintiff failed to proceed through all steps of the IDOC Grievance procedure before he filed suit on January 5, 2023. (Doc. 41, p. 11). However, Plaintiff claims that he timely filed the Grievance to the ARB and that inmates cannot control when it leaves the housing unit. (Doc. 43, p. 3). While Defendants' point is well taken, the seven-month delay between when the Grievance was received at the second level on June 9, 2022, and when Plaintiff received a response on January 31, 2023, creates a dispute of material fact as to whether the grievance process was available to Plaintiff.

While the PRLA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all administrative remedies, an inmate is only required to exhaust those administrative remedies that are available to him. *See* 42

U.S.C. § 1997e(a); *Pavey*, 663 F.3d at 903 (citations omitted). *See also Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole*, 438 F.3d at 809. Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Pyles*, 829, F.3d at 864; *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of an administrative remedy is a fact specific inquiry. *See Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Moreover, the unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

In *Warren v. Wall*, the Court determined that the ARB's failure to respond to the plaintiff's grievance within six months was sufficient to establish a dispute of material fact as to whether the grievance process was rendered unavailable. Case No. 20-CV-1295-MAB, 2023 WL 2648868, at *4 (S.D. Ill. Mar. 27, 2023). A similar circumstance exists here. For seven months, Plaintiff was unsure of the whereabouts of Grievance No. 1599-06-02. Because Plaintiff did not receive a timely response from the CAO, he proceeded to file the present lawsuit in federal Court. As Grievance No. 1599-06-02 also clearly describes the May 6, 2022, excessive force incident involving Defendant Lacy, the Court concludes that Grievance No. 1599-06-02 has been exhausted.

Defendants next argue that Plaintiff failed to exhaust Grievance Nos. 1591-06-22 and 2741-10-22 against Defendant Hill. As to Grievance No. 1591-06-22, Defendants argue that because the Grievance was received by the ARB more than 30 days after the CAO's decision, and rejected as untimely, the Grievance has not been exhausted. (Doc. 41, p. 14).

As to Grievance No. 2741-10-22, Defendants assert that the Grievance does not identify

conduct attributable to Hill and that even if it did, the Grievance is unexhausted because

it was never received by the ARB. *Id.* In response, Plaintiff claims that he placed the

grievances in the mail at Pinckneyville, but that he cannot control "who picks up the mail

or when it is received by [him], nor when it leaves the housing unit." (Doc. 43, p. 3).

Plaintiff claims he timely submitted Grievance No. 1591-06-22, as he placed it in the mail

to the ARB when he received it back from the CAO. *Id.* Similarly, Plaintiff claims that he

submitted Grievance No. 2741-10-22 to the ARB, but that it got lost in the mail. *Id.* The

Court agrees with Plaintiff regarding both grievances and believe that they also

sufficiently place the facility on notice as to Defendants' conduct.

While the Seventh Circuit has not explicitly endorsed the applicability of the

prison mailbox rule to PLRA exhaustion, many courts in this circuit have applied the

prison mailbox rule within this context. *See, e.g.*, *Warren v. Jeffreys*, Case No. 3:22-cv-00508-

GCS, 2023 WL 6605433, at *6 (S.D. Ill. Oct. 10, 2023) (collecting cases for the proposition

that per the prison mailbox rule, a grievance is filed when the prisoner places it in the

mail); *Taylor v. Brown*, 787 F.3d 851, 858-859 (7th Cir. 2015) (noting that federal courts

generally apply the prison mailbox rule which provides that an inmate's document is

filed at the moment the inmate places it in the prison mail system).

Here, Plaintiff claims that he placed Grievance No. 1591-06-22, in the mail after he

received the response from the CAO, on July 18, 2022. (Doc. 43, p. 3). Plaintiff alleges that

there was a delay between the time the CAO concurred with the Grievance Officer's

determination and when he received the Grievance back from the second level. *Id.*

Moreover, Plaintiff placed the Grievance in the mail to the ARB before the deadline. *Id.* As for Grievance No. 2741-10-22, Plaintiff claims that he placed the Grievance in the mail to the ARB after he received the Grievance back from the CAO, but that it was lost in the mail. Accordingly, the Court finds that the mailbox rule saves these two grievances.

However, the grievances must also place the facility on notice as to allow the "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *see also Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010). Accordingly, not naming the defendants is "'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Saffold v. Illinois Department of Corrections*, No 18 C 3301, 2021 WL 4477930, at *7 (S.D. Ill. Sept. 30, 2021) (quoting *Maddox*, 655 F.3d at 722). Therefore, so long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies." *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842-843 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).

Grievance No. 1591-06-22 clearly placed the facility on notice as to Defendant Hill's alleged conduct. Therein, Plaintiff recounts the May 10, 2022, conversation with Hill, where Hill allegedly told Plaintiff that he deserved to get his "ass whopped." (Doc. 41, Exh. 3, p. 66-67). Plaintiff also indicated that Hill stated that she didn't care and that she would place him where she wanted him, and to have fun in his new cell. *Id.* Plaintiff has clearly communicated to the facility, through this grievance that he believes

Defendant Hill placed him in a cell knowing that Plaintiff faced possible harm.

While Grievance No. 2741-10-22, is a closer call, the Court finds that it also sufficiently places the facility on notice as to Plaintiff's complaints against Hill. Although the Grievance does not name Hill, Plaintiff referenced the initial placement date with Vail and stated that he was complaining about the facility's "failure to properly place" him. (Doc. 41, Exh. 5, p. 7). This puts the facility on notice that Plaintiff took issue with his placement with Vail. The facility knows that Plaintiff's placement with Vail took place on May 10, 2022, and the facility could look to see who was responsible for inmate placement on that date.  Accordingly, the Court finds that Grievance Nos. 1591-06-22 and 2741-10-22 have been properly exhausted.

## Conclusion

For the reasons delineated above, the Court **DENIES** Defendants' Motion for Summary Judgment. (Doc. 40).

**IT IS SO ORDERED.**

**DATED:  March 31, 2025.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2025.03.31 12:20:30 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**